UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
NAUTILUS INSURANCE COMPANY,

**MEMORANDUM AND ORDER**

14-CV-01029 (KAM)(ST)

                    Plaintiff,

     -against-


93 LOUNGE INC., LUIS RODRIGUEZ,
EILEEN P. HUGHES, and
CHARLES AMADO, JR.,

                Defendants.

--------------------------------------X
--------------------------------------X
NAUTILUS INSURANCE COMPANY,


                                        15-CV-0166 (KAM)(ST)

                    Plaintiff,

     -against-                          (CONSOLIDATED)


93 LOUNGE INC., ASHLEY ENCALADA,
VANESSA ENCALADA, EILEEN P. Hughes,
and CHARLES AMADO, JR.


                Defendants.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Plaintiff Nautilus Insurance Company ("plaintiff" or

"Nautilus") commenced a diversity action on February 18, 2014,

against defendants 93 Lounge Inc. ("93 Lounge"), Luis Rodriguez,

Eileen P. Hughes and Charles Amado, Jr. Nautilus commenced a second diversity action on January 13, 2015, against 93 Lounge, Ashley Encalada, Vanessa Encalada, Eileen P. Hughes and Charles Amado, Jr. The two actions were consolidated on June 23, 2016. All defendants except 93 Lounge have been dismissed.

Presently before the court is Nautilus' motion for summary judgment. (Motion for Summary Judgment, ECF Nos. 37, 45.) Nautilus seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that: a) it has no duty to defend or indemnify 93 Lounge or any party with respect to the claims in two lawsuits filed in the Supreme Court of New York, Kings County related to a motor vehicle accident that occurred on January 1, 2013, on 93rd street in Kings County, New York; b) it has no duty to pay Luis Rodriguez, Ashley Encalada, Vanessa Encalada, 93 Lounge or any party for any medical expenses with respect to Luis Rodriguez's, Ashley Encalada's or Vanessa Encalada's alleged injuries; c) and for its costs of suit incurred herein, including reasonable attorneys' fees. For the reasons set forth below, the Nautilus' motion for summary judgment is granted, except as to attorneys' fees.

## Background

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the undisputed facts on which the moving

2

party relies to grant summary judgment, together with citation to the admissible evidence of record supporting each such fact. *See* Local Rule §§ 56.1(a), (d). The facts described below have been taken from the plaintiff's Rule 56.1 statement. (*See* Plaintiff's Rule 56.1 Statement ("Pl's. 56.1"), ECF No. 46.). Defendants have not opposed the motion and therefore did not submit opposing Rule 56.1 statements. Accordingly, based on the court's review of the plaintiff's 56.1 Statement and supporting exhibits, the court finds that the facts set forth in plaintiff's Rule 56.1 statement are deemed admitted. *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Local Rule 56.1(c)); *see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (holding district court was required to decide whether movant for summary judgment was entitled to judgment as matter of law even though motion was unopposed). The court resolves all conflicts in the evidence and draws all reasonable inferences in favor of defendant, the nonmoving party. *See Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) ("We 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'") (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013)).

Nautilus Insurance company issued a Commercial General Liability policy to 93 Lounge, under policy number NN212293 (the "Policy") with effective dates of June 2, 2012 through June 2, 2013. (Pl's. 56.1, ECF No. 46 at ¶ 1.)  Under the Policy coverage may be excluded on several bases.

The first exclusion upon which plaintiff relies is the Liquor Liability exclusion.  (*Id.* at 2.)  The Liquor Liability exclusion in the Policy was amended by an endorsement to the Policy (S009 (02/95)), which removed language that limited the scope of the exclusion to insureds who were "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."  (*Compare* Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability Coverage Form (CG 00 01 12 04) at 2 *with* Curran Aff. Ex. 3, ECF No. 47-3.)  The endorsement reads as follows:

> "Exclusion – Total Liquor Liability"
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion c. under Paragraph 2., Exclusions of COVERAGE A. Bodily Injury and Property Damage (Section I – Coverages) is **replaced** by the following:
>
> c. Liquor Liability
>
> "Bodily injury" or "property damage" for which any insured or his indemnitee may be held liable by reason of:

> (1) Causing or contributing to the intoxication of any person;
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> All other Terms and Conditions of this Policy remain unchanged.
>
> S009 (02/95)

(Curran Aff., Ex. 3, ECF No. 47-3 (emphasis in original).)

Plaintiff also relies on the Aircraft, "Auto" or Watercraft exclusion. (Curran Aff., Ex. 4, ECF No. 47-4.) The Aircraft, "Auto" or Watercraft exclusion in the Policy was amended by an endorsement to the Policy, which removed references to the "insured." (*Compare* Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability Coverage Form (CG 00 01 12 04) at 4 *with* Curran Aff. Ex. 4, ECF No. 47-4.) The endorsement reads as follows:

> THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY
>
> EXCLUSION – AIRCRAFT, AUTO OR WATERCRAFT
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion **g. Aircraft, Auto or Watercraft** under Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability** is **replaced** by the following:

## 2. Exclusions

This insurance does not apply to:

## g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent; or
(2)  "Bodily injury" or "property damage" arising out of:
  a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
  b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)**, of the definition of "mobile equipment" as follows:
    i. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
    ii. Air compressors, pumps and generators, including spraying,

> welding, building cleaning,
> geophysical exploration, lighting
> and well servicing equipment.

> All other terms and conditions of this policy
> remain unchanged.

> L204 (06/06)

(Curran Aff., Ex. 4, ECF No. 47-4 (emphasis in original).) The

Policy defines "auto," in relevant part, as a "land motor vehicle."

(Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability

Coverage Form (CG 00 01 12 04) at 12.) The Policy also contains

a "Coverage C. Medical Payments" provision, which provides that

Nautilus will not pay medical expenses for "bodily injury" excluded

under Coverage A. (Curran Aff., Ex. 1, ECF No. 47-1, Commercial

General Liability Coverage Form (CG 00 01 12 04) at 7; Ex. 5, ECF

No. 47-5.)

On or about April 4, 2013, defendant Mr. Luis Rodriguez

commenced an action in New York State Supreme Court, Kings County,

against 93 Lounge, HVT, Inc., Eileen P. Hughes and Charles Amado,

Jr. in New York State Supreme Court, Kings County. (Pl's. 56.1,

ECF No. 46 at ¶ 6; Curran Aff., Ex. 6, ECF No. 47-6.) In his

complaint, Mr. Rodriguez alleges that he was injured on January 1,

2013, while walking on 93rd Street in Kings County, New York when

he was struck by a motor vehicle owned by Ms. Hughes and driven by

Mr. Amado (the "Accident"). (Pl's. 56.1, ECF No. 46 at ¶ 7; Curran

Aff., Ex. 6, ECF No. 47-6 at ¶¶ 21-27.) Mr. Rodriguez also alleges

that, prior to the Accident, Mr. Amado was a patron at 93 Lounge

and Mr. Amado was sold, served and consumed alcoholic beverages while he was intoxicated at 93 Lounge. (Pl's. 56.1, ECF No. 46 at ¶ 8; Curran Aff., Ex. 6, ECF No. 47-6 at ¶¶ 29-34.) Mr. Rodriguez further alleges that 93 Lounge is liable for his injuries because it contributed to Mr. Amado's intoxication in violation of various New York State Laws, including the General Obligations Law 11-101 and Alcohol Beverage Control Law 65. (Pl's. 56.1, ECF No. 46 at ¶ 8; Curran Aff., Ex. 6, ECF No. 47-6 at ¶¶ 32-34.)

On February 3, 2013, Nautilus was notified about the Accident and Mr. Rodriguez's claim. On March 4, 2013, after conducting an investigation of the Accident and reviewing the allegations regarding the Accident and the terms of the Policy, Nautilus issued a Reservation of Rights letter to 93 Lounge. (Pl's. 56.1, ECF No. 46 at ¶ 9; Curran Aff., Ex. 7, ECF No. 47-7.) When reserving its rights to disclaim coverage, Nautilus cited to the Policy's "Exclusion – Total Liquor Liability," and noted that this provision may bar coverage for claims arising out of the Accident. (Pl's. 56.1, ECF No. 46 at ¶ 10; Curran Aff., Ex. 7, ECF No. 47-7 at 4.) Nautilus also reserved its right to rely upon other applicable exclusions in the Policy. (Pl's. 56.1, ECF No. 46 at ¶ 11; Curran Aff., Ex. 7, ECF No. 47-7 at 5-6.)

Nautilus received a copy of Mr. Rodriguez's complaint on August 16, 2013. On August 19, 2013, after investigating the Accident and reviewing the allegations in Mr. Rodriguez's

complaint and the terms of the Policy, Nautilus agreed to provide a defense to 93 Lounge in Mr. Rodriguez's lawsuit under a Reservation of Rights. (Pl's. 56.1, ECF No. 46 at ¶ 12; Curran Aff., Ex. 8, ECF No. 47-8.) In its letter, Nautilus noted that there were causes of action that were not covered by the Policy. (Pl's. 56.1, ECF No. 46 at ¶ 13; Curran Aff., Ex. 8, ECF No. 47-8 at 2.) Nautilus again cited the Policy's "Exclusion – Total Liquor Liability" provision and noted that it may bar coverage for the suit, and again reserved its rights to rely on other applicable provisions in the Policy. It also advised 93 Lounge that the Policy does not provide coverage for claims arising out of 93 Lounge's furnishing of alcohol to its customers. (Pl's. 56.1, ECF No. 46 at ¶ 14-15; Curran Aff., Ex. 8, ECF No. 47-8 at 4-5.)

On or around June 2014, Nautilus received a copy of Ms. Ashley and Vanessa Encalada's pleadings also filed in New York State Supreme Court, Kings County, against Eileen Hughes, Charles Amato, HVT, Inc., and 93 Lounge.[1] (Pl's. 56.1, ECF No. 46 at ¶ 16; Curran Aff., Ex. 8, ECF No. 47-9.) The Encaladas alleged in their amended complaint that they were injured on January 1, 2013, while walking along 93rd street in Kings County, New York when they were struck by a motor vehicle owned by Ms. Hughes and operated by Mr. Amado. They further allege that the Accident was

---

[1] The state court proceedings brought by Mr. Rodriguez, and Ms. Ashley and Vanessa Encalada are hereinafter known as the "Underlying Actions."

caused by the negligent operation of the motor vehicle. (Pl's. 56.1, ECF No. 46 at ¶ 17; Curran Aff., Ex. 9, ECF No. 47-9 at ¶¶ 10-28.) The Encaladas also allege that, prior to the Accident, Mr. Amado was a patron at 93 Lounge and Mr. Amado was sold, served and consumed alcoholic beverages while he was intoxicated at 93 Lounge, and therefore, 93 Lounge contributed to Mr. Amado's intoxication. (Pl's. 56.1, ECF No. 46 at ¶ 18; Curran Aff., Ex. 9, ECF No. 47-9 at ¶ 36-37.) The Encaladas further allege that 93 Lounge is liable for their injuries because 93 Lounge's conduct violated various New York State Laws, including the General Obligations Law 11-101 and Alcohol Beverage Control Law 65. (Pl's. 56.1, ECF No. 46 at ¶ 18; Curran Aff., Ex. 6, ECF No. 47-9 at ¶¶ 38-42.)

On October 28, 2014, after investigating the Accident and reviewing the Encaladas' allegations and the terms of the Policy, Nautilus agreed to provide a defense to 93 Lounge in the Encalada's lawsuit under a Reservation of Rights. (Pl's. 56.1, ECF No. 46 at ¶ 19; Curran Aff., Ex. 10, ECF No. 47-10.) In its letter to 93 Lounge, Nautilus noted that there were causes of action which were not covered by the policy. (Pl's. 56.1, ECF No. 46 at ¶ 20; Curran Aff., Ex. 10, ECF No. 47-10 at 3.) Nautilus cited the Policy's "Exclusion – Total Liquor Liability" and the "Aircraft, Auto, or Watercraft" exclusion provisions. Nautilus noted that these provisions may bar coverage for the suit, and

reserved its rights to rely on other applicable provisions in the Policy. It also advised 93 Lounge that the Policy does not provide coverage for claims arising out of 93 Lounge's furnishing of alcohol to its customers. (Pl's. 56.1, ECF No. 46 at ¶ 21-23; Curran Aff., Ex. 10, ECF No. 47-10 at 3-5.)

During its investigation of the Encaladas' claims, Nautilus learned that 93 Lounge had a separate Liquor Liability Policy, and that the pleadings in the Underlying Actions had also been submitted to 93 Lounge's liquor liability carrier, Founders Insurance. (Pl's. 56.1, ECF No. 46 at ¶ 24.) Founders Insurance appointed counsel who is defending 93 Lounge in the Underlying Actions. (*Id.* at ¶ 25.)

Prior to filing the present action, Nautilus, in the letters it sent to 93 Lounge, reserved its right to disclaim coverage and to seek a declaration of non-coverage. (*Id.* at ¶ 26; Curran Aff., Ex. 8, ECF No. 47-8 at 5; Curran Aff., Ex. 10, ECF No. 47-10 at 4.). On February 18, 2014 and January 13, 2015, Nautilus commenced these actions seeking a declaration that it had no duty to defend or indemnify 93 Lounge or any party in the Underlying Actions. (See Complaints, ECF Nos. 1.) The two actions 14-CV-1029 and 15-CV-0166 were consolidated on June 23, 2016. (*See* Docket Entries dated June 23, 2016.) All the individual defendants have been dismissed from these actions. (*See* Stipulations of Dismissals, No. 15-cv-00166, ECF Nos. 9, 16, 36; No. 14-cv-1029,

ECF No. 28.)  The only remaining defendant is 93 Lounge.  Defendant 93 Lounge advised the court on June 28, 2016, that it would not oppose plaintiff's summary judgment motion.  (*See* Letter dated June 28, 2016, ECF No. 43.)

## STANDARD OF REVIEW

### I.   Motion for Summary Judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).  "A motion for summary judgment is proper where the issues to be resolved are questions of law, not fact.  Thus, summary judgment is appropriate in the present case because 'the determination of the duty to defend is a question of law answered by comparing the allegations of the complaint (underlying action) to the provisions of the policy.'" *United Nat. Ins. Co. v. Horning, Ltd.,* 882 F. Supp. 310, 312 (W.D.N.Y. 1995) (quoting *National Grange Mut. Ins. Co. v. Continental Cas. Ins. Co.*, 650 F.

Supp. 1404, 1408 (S.D.N.Y. 1986)).

## DISCUSSION

Plaintiff seeks a declaration that under the Policy, it has no duty to defend or indemnify 93 Lounge or any other party for the injuries alleged to have been suffered by Mr. Rodriguez, Ms. Ashley Encalada and Ms. Vanessa Encalada, or to pay for any medical or other expenses associated with the Underlying Actions. "In New York,[2] 'an insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay.'"[3] *Ma-Do Bars, Inc. v. Penn-Am. Ins. Co.*, No. 1:09-CV-901 (GLS) (DRH), 2010 WL 5138475, at *3 (N.D.N.Y. Dec. 9, 2010)(quoting *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (N.Y. 1974)); *see also Horning*, 882 F. Supp. at 312 ("The duty to defend, under New York law, has been interpreted as 'heavier and broader'

---

[2] The court is sitting in diversity so New York choice of law rules apply. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941). In New York, "'the traditionally determinative choice of law factor [is] the place of contracting.'" *Id.* (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994). "In the insurance law context, New York recognizes the precept that a court should apply 'the local law of the state which the parties understood was to be the principal location of the insured risk.'" *Schwartz*, 539 F.3d at 152 (quoting Restatement (Second) of Conflict of Laws § 193 (1971)); *see also Zurich*, 84 N.Y.2d at 318, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (considering "what the parties understood to be the location of the risk"). Here, the location of the risk, 93 Lounge's place of business, was in Kings County, New York. Therefore, the court applies New York law.

[3] Unlike "an insurer's broad duty to defend, the duty to indemnify is determined by the actual basis for the insured's liability to a third person and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy." *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, No. 02 CV 4179(BSJ), 2004 WL 1497563, at *5 (S.D.N.Y. July 1, 2004) (citation and internal quotation marks omitted).

than the duty to indemnify.") (citing *Servidone Construction Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 423–24, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985)). "The insurer must defend the insured in any matter covered by the policy where the insured may be held liable for damages, regardless of the likelihood of success on the underlying claim." *Horning*, 882 F. Supp. at 312 (citing *Avondale Industries, Inc. v. Travelers Indem. Co.*, 123 F.R.D. 80, 82 (S.D.N.Y.1988), *aff'd* 887 F.2d 1200 (2d Cir. 1989), *cert. denied*, 496 U.S. 906, 110 S. Ct. 2588, 110 L.Ed.2d 269 (1990).

To succeed on a claim that the terms of the policy bar coverage, the insurer must "demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013) (citation and internal quotation marks omitted). "The insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon." *Ocean Partners, LLC v. North River Ins. Co.*, 546 F. Supp. 2d 101, 110 (S.D.N.Y. 2008) (citation and internal quotation marks omitted). After "an insurer establishes that a policy exclusion

applies, the burden shifts to the policyholder to prove that an exception to that exclusion applies." *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012). Notwithstanding this burden shift, any ambiguity in the policy's language must be construed against the insurer and in favor of the insured. *Id.* at 124. The test for ambiguity in an insurance contract is whether "an ordinary business man in applying for insurance and reading the language of these policies would have thought himself covered against precisely the damage claims now asserted." *U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500, 504 (W.D.N.Y. 2012) (quoting *Kenyon v. Security Ins. Co. of Hartford*, 163 Misc.2d 991, 626 N.Y.S.2d 347, 350 (N.Y. Sup. Ct. 1993)) (modifications omitted); *see also Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37, 39 (N.Y. 1974) (same). "'Ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *LeBeau, Inc.*, 847 F. Supp. 2d at 503 (quoting *40 Gardenville, LLC v. Travelers Prop. Cas. of Am.*, 387 F. Supp. 2d 205, 212 (W.D.N.Y. 2005) (modifications omitted)).

Applying these standards to the case at bar, the court finds that the "Liquor Liability" exclusion and the "Aircraft, Auto or Watercraft" exclusion are unambiguous, and that they

clearly apply to the claims at issue here. Accordingly, plaintiff's motion for summary judgment is granted.

### 1. LIQUOR LIABILITY EXCLUSION

In its summary judgment motion, Nautilus argues that it has no duty to defend or indemnify any party in the Underlying Actions because the Policy's Liquor Liability exclusion applies. First, the court finds that the Liquor Liability exclusion is unambiguous because an "ordinary business man" would have reasonably believed that claims arising out of furnishing alcohol to a person, thereby contributing to the person's intoxication, would be barred from coverage. The Liquor Liability exclusion, in relevant part, expressly excludes coverage for claims where the insured is potentially liable or is held liable for "causing or contributing to the intoxication of any person" and for "furnishing [] alcoholic beverages to a person . . . under the influence of alcohol." (Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability Coverage Form (CG 00 01 12 04) at 2; Ex. 3, ECF No. 47-3.)

The complaints in the Underlying Actions both allege that 93 Lounge served Mr. Amado alcohol when they knew, or should have known, that Mr. Amado was intoxicated, causing him to operate a motor vehicle while under the influence of alcohol, which led to the Accident that injured Mr. Rodriguez, Ms. Ashley Encalada, and Vanessa Encalada. Upon a review of the complaints from the

Underlying Actions, the court finds no other bases for liability that does not derive from, arise out of, or is independent of 93 Lounge serving alcohol to Mr. Amado, thereby contributing to Mr. Amado's intoxication. Thus, all claims brought by Mr. Rodriguez, and Ms. Ashley and Vanessa Encalada against 93 Lounge in the Underlying Action are excluded by the Policy. *See Ma-Do Bars*, 2010 WL 5138475, at *4 ("Where a claim alleged in the complaint arises out of an operative act that is excluded from coverage," then all claims that "cannot be established without proving the operative act" are also excluded.) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 350-52 (N.Y. 1996)).

Courts have found similar Liquor Liability exclusions unambiguous and excluded coverage where the allegations were based on the insured providing alcohol to the injured party. *In N.Y. Mut. Underwriters v. Burdick*, 196 A.D.2d 668, 669-70, 601 N.Y.S.2d 37 (1993), it was alleged that the insured was negligent in training her employees in the "appropriate manner of serving alcoholic beverages", the insured's employees served substantial quantities of alcohol to a person who was in an intoxicated state, failed to control the person, and failed to "perceive the dangerous condition created" by the presence of the individual and his "continuous consumption of alcoholic beverages." *Id.* The court found that all the allegations either directly or indirectly arose out of the insured's business of selling and serving alcoholic

beverages and, as such, they were excluded under the insurer's policy. (*Id.*)

The court in *Cole's Rest., Inc. v. N. River Ins. Co.*, 85 A.D.2d 894, 894, 446 N.Y.S.2d 734 (1981), similarly held that there was "no factual basis or legal theory which may be developed at trial that could obligate the insurance companies to pay," and that the allegations clearly fell within the exclusion of the policy. In *Cole's*, the relevant insurance policy contained an exclusion for bodily injury or property damage resulting from the sale of liquor in violation of the Dram Shop Act (General Obligations Law, § 11-101) and for other improper sale of alcohol. The allegations concerned the insured's employees serving a patron alcohol immediately before an accident, when the employees knew or should have known that the patron had become intoxicated. (*Id.*)

As in *Burdick* and in *Cole's*, the allegations in the Underlying Actions arise from 93 Lounge's allegedly serving alcohol to Mr. Amado, leading to Mr. Amado driving while intoxicated which caused the Accident that injured Mr. Rodriguez, Ms. Ashley Encalada, and Ms. Vanessa Encalada. Accordingly, the court finds as a matter of law that the claims alleged in the Underlying Actions are excluded as per the Liquor Liability exclusion in the Policy. *See Ma-Do Bars*, 2010 WL 5138475, at *6 (finding that the liquor liability exclusion barred claim alleging that the provision of alcoholic beverages contributed to the

party's intoxication and caused the injuries and violated New York State law); *Handlebar Inc. v. Utica First Ins. Co.*, 290 A.D.2d 633, 635, 735 N.Y.S.2d 249 (2002) (holding that the injured party's "allegations concerning a violation of the Dram Shop Act—that alcoholic beverages were continually served to Greaves while he was visibly intoxicated—fall squarely within the Dram Shop exclusion relieving the insurer of any duty to defend or indemnify"). Consequently, pursuant to the Liquor Liability Exclusion, Nautilus does not a have a duty to defend or indemnify 93 Lounge or any party in the Underlying action.

## 2. AIRCRAFT, AUTO OR WATERCRAFT EXCLUSION

In its summary judgment motion, Nautilus also argues that it has no duty to defend or indemnify any party in the Underlying Actions pursuant to the Policy's Aircraft, Auto or Watercraft exclusion. The first step in the analysis is determining whether an "ordinary business man" would have reasonably believed that the Policy's Aircraft, Auto or Watercraft exclusion for "bodily injury . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto'" would exclude such injuries regardless of whether they were, as here, caused by the use of an automobile by a third party, with no formal relationship to the insured. (Curran Aff., Ex. 4, ECF No. 47-4.) The court finds that the Aircraft, Auto or Watercraft exclusion clearly and unambiguously excludes coverage for any and

all personal injuries "arising out of the . . . use . . . of any . . . auto[mobile]," including use by third parties, and that an ordinary businessperson could not have reasonably believed otherwise. (*Id.*)  Nothing in the language of the exclusion indicates that the exclusion was limited to only the insureds and others with a formal relationships with the insured.

Other courts have found similar "auto exclusions" to be unambiguous.  In *LeBeau, Inc.*, 847 F. Supp. 2d at 504, the court found unambiguous a policy exclusion for injuries "arising out of the use . . . of any auto," and held that it excluded "coverage for any and all personal injuries 'arising out of the . . . use . . . of any automobile,' including use by third parties." *Id.*  The auto exclusion and endorsement at issue here are virtually identical to those in *LeBeau*.

As in *LeBeau*, the auto exclusion here was amended by the endorsement removing references to the "insured." *LeBeau, Inc.*, 847 F. Supp. 2d at 504-05.  The endorsement also removed, in the section that specifies what "the exclusion does not apply to," references to ownership and liability assumed under any "insured contract." (*Compare* Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability Coverage Form (CG 00 01 12 04) at 4 *with* Curran Aff. Ex. 4, ECF No. 47-4.)  Thus, as in *LeBeau*, the endorsement's revisions "serve to highlight and clarify the total lack of coverage for injuries arising out of the use of an automobile."

*LeBeau, Inc.*, 847 F. Supp. 2d at 505. Nor is the language in the exclusion inconsistent with the rest of the Policy. "The modifications [in the endorsement] serve solely to specify that while injuries caused by aircraft and watercraft owned, operated or loaned to 'any insured' continue to be excluded, just as specified in the original policy language, the exclusion for injuries caused by the 'ownership . . . use or entrustment to others of any auto' is no longer limited solely to insureds." *Id.*; (Curran Aff. Ex. 4, ECF No. 47-4.)

Thus, the court agrees with the rationale of *LeBeau* and finds that the Policy, including the Aircraft "Auto," or Watercraft exclusion, as amended by the endorsement, was unambiguous and that the "ordinary business man" would have interpreted the Policy to exclude claims for bodily injuries arising out of the use of an automobile. *LeBeau, Inc.*, 847 F. Supp. 2d at 505-06; *see also*, *DMP Contracting Corp. v. Essex Ins. Co.*, 76 A.D.3d 844, 845-47, 907 N.Y.S.2d 487 (1st Dept. 2010), (finding that the "plain meaning" of an exclusion for "bodily injury . . . arising out of . . . any auto" is that bodily injury occurring as described is not covered, whether or not it is the insured who owned, maintained, used or entrusted to others the subject automobile."); *Ruge v. Utica First Ins. Co.*, 32 A.D.3d 424, 424-26, 819 N.Y.S.2d 564 (2d Dept. 2006) (finding no ambiguity as to the plain and ordinary meaning of the auto exclusion, which excluded coverage

"for bodily injury, property damage, personal injury or advertising injury that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of . . . an auto" and holding that a claim seeking coverage for injuries sustained in an automobile accident was excluded as per the auto exclusion).

Further, the Aircraft, Auto or Watercraft exclusion specifically contemplates the circumstances here. That is, the exclusion specifies that it will apply in circumstances where the claims allege "negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others, if the 'occurrence' which caused the 'bodily injury' . . . involved the ownership, maintenance, use or entrustment to others of any . . . auto[mobile]." (Curran Aff., Ex. 4, ECF No. 47-4.) As discussed above, the crux of the allegations in the Underlying Actions are that 93 Lounge negligently served alcohol to Mr. Amado when it knew, or should have known, that he was intoxicated, and would operate an automobile while intoxicated, thereby causing the accident which injured Mr. Rodriguez, Ms. Ashley Encalada, and Ms. Vanessa Encalada. Accordingly, the court finds as a matter of law that the claims alleged in the Underlying Actions are excluded under the Aircraft, Auto or Watercraft exclusion the in the Policy. Consequently, Nautilus does not a have a duty to defend or indemnify 93 Lounge or any party in the Underlying action.

### 3. Medical Payments Exclusion

Nautilus argues further that it is entitled to a declaration that it does not have a duty to pay Mr. Rodriguez, Ms. Ashley and Vanessa Encalada, 93 Lounge or any party for any medical expenses with respect to the injuries alleged in the Underlying Actions because the claims in the Underlying Action are excluded from coverage under the Liquor Liability and the Aircraft, Auto or Watercraft exclusions. The Policy contains a "Coverage C Medical Payments" provision, which provides that Nautilus will not pay medical expenses for "bodily injury" excluded under Coverage A. (Curran Aff., Ex. 1, ECF No. 47-1, Commercial General Liability Coverage Form (CG 00 01 12 04) at 7; Ex. 5, ECF No. 47-5.).

Here, the injuries alleged in the Underlying Action are excluded under Coverage A pursuant to the Liquor Liability and the Aircraft, Auto or Watercraft exclusion, as set forth above. Thus, any medical expenses claimed by Mr. Rodriguez, Ms. Ashley Encalada and Vanessa Encalada or any other party to the Underlying Actions would fall under the "Coverage C Medical Payments" exclusion provision. Accordingly, Nautilus cannot be held liable to any party for any medical expenses incurred in connection with Mr. Rodriguez's, Ms. Ashley Encalada's and Ms. Vanessa Encalada's alleged injuries in the Underlying Actions.

## CONCLUSION

It is without question that under New York law the insurer bears the burden of establishing that an exclusionary clause applies. *Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 CIV. 7425 JPO, 2012 WL 4889280, at *11 (S.D.N.Y. Oct. 16, 2012)(citing *Shelby Realty LLC v. Nat'l Surety Corp. & Fireman's Fund Ins. Co.*, No. 06-Civ-3260, 2007 WL 1180651 at *3 (S.D.N.Y. April 11, 2007)). However, where the insurer meets its burden, and where the terms of a policy are unambiguous, summary judgment is appropriate. Here, Nautilus has met its burden.

Accordingly, Nautilus' motion for summary judgment is **GRANTED**. It is declared that the plain language of the Policy relieves Nautilus of any duty to defend or indemnify 93 Lounge or any other party with respect to the claims in the Underlying Actions. Furthermore, it is declared that Nautilus owes no duty to pay for Mr. Rodriguez's, Ms. Ashley Encalada's, and Vanessa Encalada's, or any other party's medical expenses associated with the Underlying Actions. Should plaintiff seek to pursue its request for reasonable costs, plaintiff shall submit an application, supported by documentation as required by the Second Circuit, for reasonable costs within fourteen days of this order.

The Clerk of Court is respectfully directed to enter judgment for plaintiff and to close this case.

**SO ORDERED.**

Dated:     March 31, 2017

           Brooklyn, New York

                              _____/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge